**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF VERMONT**



Filed & Entered
On Docket
11/19/04

In re:

**Lawrence H. Mutty and**             **Chapter 7 Case**
**Lucille S. Mutty**                         **# 04-10634**
         **Debtors.**

### MEMORANDUM OF DECISION
### DISMISSING CHAPTER 7 CASE FOR SUBSTANTIAL ABUSE UNDER §707(b)

On May 4, 2004, the Debtors filed for chapter 7 bankruptcy relief. After the § 341[1] meeting, the United States Trustee filed a motion to dismiss the case under 11 U.S.C. § 707(b), alleging that the Debtors' case filing constituted a substantial abuse of the Bankruptcy Code (doc. # 6) (the "Motion to Dismiss"). The Debtors filed an objection to the motion to dismiss (doc. # 7). On September 7, 2004, a hearing was held at which the parties presented legal arguments and waived an evidentiary hearing. Each party subsequently filed a memorandum of law (docs. ## 8, 9).

The issue presented is whether granting Chapter 7 relief to the Debtors would be a substantial abuse of the provisions of the Bankruptcy Code as described in § 707(b) in light of the Debtors' inclusion of credit card debts as current monthly expenses on their Schedule J, their failure to file an accurate Schedule I, and their significant monthly net disposable income. For the reasons set forth below, and in light of the particular facts of this case, the Court finds that granting chapter 7 relief to the Debtors would be a substantial abuse of the provisions of the Bankruptcy Code. Accordingly, the Court grants the Motion to Dismiss.

#### BACKGROUND

The material facts are uncontested. Lawrence Mutty and Lucille Mutty, the Debtors, are currently employed by the Chamberlain School as an admissions director and a therapist, respectively. The Debtors filed for chapter 7 bankruptcy relief on May 4, 2004. There is no dispute with respect to the accuracy of the petition or of Schedules A through H or Statement of Financial Affairs. The U.S. Trustee directs her challenge to the accuracy of Schedules I and J.

---

[1] Unless otherwise indicated, all statutory references are to the United States Bankruptcy Code.

Specifically, the U.S. Trustee disputes the accuracy of the income the Debtors disclosed on Schedule I. The Debtors listed this to be $7,621. But, when the U.S. Trustee called the Debtors' attention to conflicting income information shown on the Debtors' pay stubs, the Debtors acknowledged that their actual monthly income was $8,059.55. See the Debtors' Objection to the Trustee's Motion to Dismiss (doc. # 7) To date, the Debtors have not amended Schedule I to reflect the correct income figure. The U.S. Trustee also disputes the accuracy of the Debtors' Schedule J, where the Debtors declared their total monthly expenses to be $8,055.50 (doc. #1). The U.S. Trustee particularly objects to the Debtors' inclusion of the following expenses on Schedule J: $1,525.00 for "Credit Card Debt," $240.00 for a student loan, and $412.50 due the Internal Revenue Service for unpaid taxes (doc. # 6). It is the U.S. Trustee's position that the Debtors' failure to accurately disclose their monthly income and expenses and their insistence on pursuing chapter 7 relief, even though it is now clear that they have sufficient net disposable income to pay a meaningful dividend to their creditors, constitutes grounds for dismissal of the case under § 707(b).

### SUBSTANTIAL ABUSE AND THE TOTALITY OF THE CIRCUMSTANCES TEST

Under § 707(b) of the Bankruptcy Code, also known as the substantial abuse provision,

> the court, on its own motion or on a motion by the United States trustee, . . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer if it finds that the granting of the relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C. § 707(b) (2004). "Substantial abuse" is not defined by the Bankruptcy Code. In re Kornfield, 164 F.3d 778, 781 (2d Cir. 1999). Substantial abuse "connotes the idea that it would be inequitable to grant the debtor relief from his debts because of his ability to pay his debts and because of the absence of any mitigating factors." Kornfield v. Schwartz, 214 B.R. 705, 707 (W.D.N.Y. 1997). As a result of the Second Circuit's ruling in Kornfield, this court is compelled to apply the "totality of the circumstances" test when determining whether to dismiss a case under § 707(b) for substantial abuse. In re Kornfield, 164 F.3d. at 783. The totality of the circumstances test "seeks to ascertain whether the debtor is attempting to obtain an inequitable discharge at the expense of his or her creditors." Id. at 784. The test affirmed by the Second Circuit came from a bankruptcy court decision involving two motions for substantial abuse: In re Carlton and In re Kornfield.[2] The bankruptcy court adopted a two-part test to determine whether a filing should be dismissed for substantial abuse: (1) whether the debtors have the ability to pay a substantial dollar amount or percentage

---

[2] The citation for the bankruptcy court's decision is found under In re Carlton, not In re Kornfield. Only Kornfield appealed to the district court and then to the Second Circuit, so the lower court decision is In re Carlton whiled the circuit court decision is In re Kornfield, though both decisions address the same issues.

of [their] unsecured debts, and (2) whether, under the totality of the circumstances, any factors exist which may mitigate against the debtors' ability to pay, or constitute aggravating factors to show debtors' bad faith or dishonesty, or that the debtors are not truly needy. In re Carlton, 211 B.R. 468, 478 (Bankr.W.D.N.Y. 1997), aff'd sub nom. Kornfield v. Schwartz, 214 B.R. 705 (W.D. N.Y. 1997), aff'd sub nom. In re Kornfield, 164 F.3d 778 (2d Cir. 199). In Carlton, the court compiled factors from previous cases that are appropriately considered under the totality of the circumstances test, and anticipated the list increasing as more substantial abuse motions were brought. Id. at 478. The factors that may be considered under the totality of the circumstances prong of the Kornfield test are:

(1) whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;
(2) whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to pay;
(3) whether the petition was filed in good faith;
(4) whether the debtor exhibited good faith and candor in filing his schedules and other documents:
(5) whether the debtor has engaged in "eve of bankruptcy purchase;"
(6) whether the debtor was forced into chapter 7 by unforseen or catastrophic events;
(7) whether the debtor's disposable income permits the liquidation of his consumer debts with relative ease:
(8) whether the debtor enjoys a stable source of future income:
(9) whether the debtor is eligible for adjustment of his debts through chapter 13 of the Bankruptcy Code;
(10) whether there are state remedies with the potential to ease the debtor's financial predicament;
(11) whether there is relief obtainable through private negotiation, and to what degree;
(12) whether the debtor's expenses can be reduced significantly without depriving him of adequate food, clothing, shelter, and other necessities;
(13) whether the debtor has significant retirement funds which could be voluntarily devoted in whole or in part to the payment of creditors;
(14) whether the debtor is eligible for relief under chapter 13 of the Bankruptcy Code; and
(15) whether there is no other choice available to the debtor for working out his financial problems other than chapter 7, and whether the debtor has explored or attempted other alternatives.

Id. at 478.

The Court finds that § 707(b) is applicable to this case because the Debtors' debts are primarily consumer in nature. Under § 101(8), "consumer debt" is defined as debt incurred by an individual primarily for a personal, family or household purpose. A review of the Debtors' schedules reveals that most of the debts listed meet this definition. Therefore, the Court will apply the two-part test affirmed by the Second Circuit in Kornfield to determine whether the granting of chapter 7 relief in this case would be a substantial abuse of the bankruptcy system.

1. Ability to Pay

The first prong of the Kornfield test is whether the Debtors have the ability to pay a substantial dollar amount or percentage of their unsecured debts. To assess the Debtors' ability to pay, the court looks to the disposable income that would be available for them to pay creditors under a hypothetical chapter 13 plan. In re Fletcher, 248 B.R. 48, 50 (Bankr. D. Vt. 2000) (paraphrasing In re Heffernen, 242 B.R. 812, 816 (Bankr.D.Conn. 1999). In determining the ability to pay, the Court relies primarily on the monthly income and expense data the Debtors provided on their Schedules I and J.

On Schedule I, the Debtors declared their monthly income to be $7,621.00, but they have acknowledged that their actual monthly income is $8,059.55 (doc. # 7). The Debtors' Schedule J lists their expenses at $8,055.50 (doc. # 1). Relying on these figures leads one to conclude that the Debtors have only $4.05 of net monthly disposable income. However, based upon the Debtors' own admissions, it is clear that the figures on Schedule I and J are not accurate. According to the Debtors, they erroneously calculated their income from their two employers on a semimonthly basis when they should have been using a biweekly basis for one employer and a semimonthly for the other (doc .# 7). The U.S. Trustee detected the error after examining the Debtors' pay stubs. In the Motion to Dismiss, the U.S. Trustee alleged that the Debtors' actual monthly income was $8,128.79 (doc. # 6). However, during the hearing on September 7, 2004, the parties agreed that the Debtors' net monthly income was, in fact, $8,059.55[3] (doc. # 9), even though the Debtors have never amended their Schedule I to reflect the correct monthly income.

The expense side of the equation is equally flawed. The Debtors have included on Schedule J the expense attributable to dischargeable credit card payments in the amount of $1,525.00 per month. In the normal course of events, when a debtor receives a chapter 7 discharge he or she is relieved of personal liability for credit card debts. 11 U.S.C. § 727(b). Individuals file for bankruptcy relief primarily to obtain the discharge and extinguish their liability for debt. The Debtors have not introduced any evidence, or even presented any argument, indicating that they have reason to believe that the credit card obligations referred to on Schedule J would not be dischargeable. Nor have the Debtors introduced any evidence, or presented any argument, that they feel morally obligated, or intend, to repay these apparently dischargeable obligations. From the record before it, the Court finds that the Debtors would have every reason to expect that these debts would be discharged if their case were not dismissed, and that the Debtors' inclusion of the credit card debt in Schedule J, as if it were a continuing monthly expense, is misleading. The Debtors' actual monthly expenses, after deducting the credit card expense, is $6,530.50. That is the figure that the Debtors should have

---

[3] The U.S. Trustee had calculated the Debtors' income on a biweekly basis when it should have been calculated as biweekly for one and semimonthly for the other. At the hearing on September 7, 2004, the parties agreed that the calculations set forth in the Debtors' Objection to the Motion to Dismiss were accurate.

listed on Schedule J when the case was filed, and they signed their schedules under penalty of perjury. With this decrease in monthly expenses, the Debtors' monthly net disposable income increases to $1529.05.[4]

The U.S. Trustee's motion also finds additional disposable income based upon further investigation of a $3,300 unsecured priority claim the Debtors owed to the Internal Revenue Service at the time of filing. The Debtors included a monthly expense on their Schedule J for this obligation in the amount of $412.50. Since the obligation to the IRS is not dischargeable, the U.S. Trustee does not object to this monthly expense being included either on Schedule J or in the computation of current net disposable income. However, based upon the Debtors' schedules and the U.S. Trustee's calculations, it appears that if the Debtors have been making their monthly payments to the IRS post-petition, they owe less than $1,000 at this time and would satisfy this obligation in February 2005. Hence, as of March 2005 the Debtors' monthly disposable income will increase by $412.50, to $1,941.55. The Court finds this amount to be sufficient to support a determination that the Debtors can fund a meaningful dividend to unsecured creditors through a chapter 13 plan.[5]

### 2. Application of the "Totality of the Circumstances" Test

A debtor's ability to make payments that would fund a meaningful dividend to creditors under a chapter 13 plan is not dispositive in determining substantial abuse under § 707(b). The Kornfield test requires that the totality of the circumstances test be utilized and that the Court specifically determine whether any mitigating or aggravating factors exist which might offset the debtor's ability to pay. In re Kornfield, 164 F.3d 778, 780 (2d Cir.1999). As discussed above, in Kornfield the Second Circuit cites with approval the factors articulated in In re Carlton, 211 B.R. 468 (Bankr. W.D.N.Y 1997). These factors assist the court in ascertaining whether, on the one hand, there is anything which may mitigate against the debtor's "ability to pay", or, on the other hand, constitute aggravating factors that may show a debtor's bad faith or dishonesty, or that a debtor is not truly needy. Id. at 478. The court will also consider "any and all relevant factors brought to its attention by the parties in a particular case." Id. at 478. The scope of the court's examination is limited by the facts and circumstances presented in each case. In the instant case, given the narrow scope of the objection, focusing only on the Debtors' inaccurate listing of income and expenses, the following factors appear to the Court to be salient:

---

[4] The new total for disposable income is computed by adding $1,525.00 + $4.05 =$1,529.05.

[5] In the United States Trustee's memorandum of law, she provides a breakdown for three different chapter 13 plans. With the total disclosed unsecured debt of $60,750.00, and assuming a chapter 13 Trustee's fee of 10%, a plan would require payments of either $1,856.25 per month for 36 months, $1,392.19 per month for 48 months or $1,113.75 per month for 60 months. The U.S. Trustee explained that the payment under a 36 month plan exceeds the current disposal income of $1,529.05, but this would be temporary. Once the Debtors finished making payments to the IRS in two months, the disposable income would increase to $1,941.05 and hence this $1,529 per month payment would be affordable (doc. #9).

  (1) whether the Debtors exhibited good faith and candor in filing schedules and other documents;

  (2) whether the Debtors enjoy a stable source of future income; and

  (3) whether there is no other choice available to the Debtors for working out their financial problems other than chapter 7 and whether the Debtors' have explored or attempted other alternatives.

Id. at 478.

  Under the facts and allegations of the Motion to Dismiss, the question of whether the Debtors exhibited good faith and candor in filing schedules and other documents is by far the most critical. The Debtors completed and signed the schedules under penalty of perjury   This is a serious oath and requires diligence, thoroughness and brutal honesty. As detailed above, the Debtors' Schedules I and J included substantial inaccuracies which, taken together, understated the Debtors' net monthly disposable income by almost $1,500. The Court finds the Debtors' failure to file accurate schedules, and exacerbated by their failure to present any persuasive exculpatory explanation, to support a finding of substantial abuse.

  Equally troubling to the Court is the Debtors' failure to amend their schedules to correct these misstatements and their failure to offer any explanation for why they did not amend the schedules after the discrepancies were brought to light. Is this a dereliction of duty by the Debtors' counsel, or a refusal by the Debtors to file accurate schedules, or the manifestation of either the attorney's or Debtors' intention to continue to mislead parties who review the Debtors' schedules? The Court finds the Debtors' failure to amend the schedules promptly upon realizing that they contained serious errors to contribute to the appearance that the Debtors' filing was an abuse of the bankruptcy system.

  The facts of the instant case are quite similar to those presented in In re Dubberke, 119 B.R. 677 (Bankr. S.D. Iowa 19990). In the Dubberke case, the debtor had included three dischargeable monthly debts in her Schedule J list of expenses. Id. at 659. The debtor later amended her schedules in order to try to avoid a motion to dismiss for substantial abuse. Id. at 659. However, the bankruptcy court found even the amended schedules suspect since they included payments to certain unsecured creditors. There, the debtor attempted to defend her schedules by arguing that she wished to pay some creditors whom she was entitled to discharge; in effect, she wished to pick and choose which creditors would be discharged and which she would unilaterally and voluntarily exempt from discharge. She argued, in effect, that her intent to pay certain dischargeable debts should immunize her case from dismissal under § 707(b). The bankruptcy court found her argument to be without merit. The Dubberke court dismissed the debtor's chapter 7 case, finding that the debtor had an ability to pay, that the debtor had deliberately manipulated her schedules to suggest that she did not have the ability to pay, and that her conduct constituted substantial abuse under § 707(b).

Although <u>In re Dubberke</u> was not decided in the Second Circuit and was decided before <u>In re Kornfield</u>, the Court finds this early application of the totality of the circumstances test to facts similar to those presented herein to be both sound and instructive. In the instant case, the Debtors are facing a motion to dismiss for substantial abuse, have filed inaccurate income and expense schedules, had an opportunity to amend the schedules, have chosen not to amend their schedules in spite of the errors and the threat of dismissal, and persist in seeking chapter 7 relief though it is clear they have significant net disposable income. As in <u>Dubberke</u>, the Debtors' inclusion of payments on dischargeable debts on their Schedule J appears intended to mislead the Court and parties in interest, by understating their actual monthly obligations and reflecting an inability to make a meaningful distribution to all unsecured creditors in a chapter 13 plan. By including the $1,525.00 monthly credit card payment, the Debtors have affirmed under penalty of perjury that they have only $4.05 of monthly net disposable income. That is not accurate. The only defense the Debtors have offered to justify this misstatement is their argument in their memorandum of law that "monthly credit cards payments are a fact of life in many households and do not represent an unusual monthly expense" (doc. # 8). This is neither responsive to the question nor persuasive. The Court finds that the Debtors did not act in good faith or with candor when completing, signing or filing their schedules. Additionally, the Debtors' statement fails to take into account that in a chapter 7 case credit card debts are generally dischargeable, and therefore not part of a debtor's monthly expense post-petition. The Debtors would reap a surplus of disposable income of approximately $1,500 if they were allowed to remain in chapter 7 and obtain a discharge of the subject credit card debt. This would be an abuse of the bankruptcy system. Therefore, the Court finds, in applying this component of the totality of circumstances test, that the Debtors did not file their schedules in good faith and with candor.

The second relevant factor is whether the Debtors enjoy a stable source of future income. The Debtors are gainfully employed by the Chamberlain School as an admissions director and a therapist. There is no indication that their employment is not stable and the Court finds that since Mr. Mutty has been with the Chamberlain School for six years and Mrs. Mutty has been with the school for over four years, it would appear quite likely that they do have a stable source of future income.

The third relevant factor is whether there is any alternative available to the Debtors for working out their financial problems other than chapter 7 bankruptcy relief, and whether the Debtors have explored or attempted other alternatives. In their affidavit, the Debtors stated that several years ago they tried working with a "credit card counseling agency" as a means of avoiding bankruptcy. The Debtors ceased working with this company because the payments were too high to maintain, and they were not making any progress on the principal of the debt. (doc. # 7, Exh. C, ¶ 8 in Affidavit) The Debtors began inquiries into another "credit card counseling agency" that promised lower payments, but ultimately "chose not to pursue it any further because

of the displeasure of their creditors and because there were hidden legal fees" (doc. #7, Exh. C, ¶ 8 in Affidavit). The Debtors do not explain the connection between the response of the creditors and their decision to discontinue investigation of non-bankruptcy options. There is no evidence that the Debtors explored any other alternatives, and specifically, there is no evidence that the Debtors considered the option of filing for chapter 13 bankruptcy relief. This further supports a finding of substantial abuse.

### 3- The Absence of Mitigating Factors

The case law under § 707(b) makes clear that indicia of bad faith may be overcome by a showing of mitigating factors. Thus, for example, if the debtor can demonstrate extraordinary circumstances that might not be obvious from a review of the schedules, the court may find that the debtor has not abused the bankruptcy system by filing for chapter 7 relief. The court in In re Marcoux, 301 B.R. 381 (Bankr. D.Conn. 2003), examined mitigating factors, undertook a totality of the circumstances test and found that there was no substantial abuse. It found that the following factors were dispositive in its decision:(1) the debtor had no reserve for unanticipated expenses; (2) debtor established that the bankruptcy was precipitated by his divorce; (3) the current wife was unemployed; (4) one of the debtor's stepchildren had medical expenses for which the ex-husband provided no assistance; (5) the debtor sold his marital home which satisfied the first mortgage, but not the second mortgage; and (6) the debtor, his current wife, and two stepchildren live with her parents because they could not afford their own housing. Id. at 386-87.

Another example where mitigating factors prevented a finding of substantial abuse comes from In re Degross, 272 B.R. 309 (Bankr. M.D.Fla. 2001). The Degross court found the following factors persuasive: (1) the debtor suffered from a chronic heart condition, heart arrhythmia, which contributed to her decision to file;(2) bankruptcy was not likely to improve the debtor's standard of living; (3) the debtor could not make a meaningful distribution to creditors through a chapter 13; (4) the debtor made no "eve of bankruptcy" purchases; (5) the debtor attempted to negotiate with her creditors; and (6) the debtor's schedules and statement of current income and expenses reasonably and accurately reflected her true financial condition. Id. at 316-17. See also, In re Ackerberg, 1998 WL 34066298, *3 (Bankr. S.D. GA 1998) (no substantial abuse where debtors' petition filed in good faith and in anticipation of impending divorce which promised to change financial conditions significantly, despite apparent ability to pay reflected in schedules; anticipated changes eviscerated ability to pay).

In the instant case, the Debtors do not offer any evidence that they were forced into a chapter 7 case due to any unforseen or catastrophic event, sudden illness, disability, emotional trauma caused by creditor pressure, unemployment, or pending divorce. They offer no evidence of any mitigating factor that would offset their failure to accurately disclose their actual net monthly income nor do they articulate any urgent financial circumstance that only chapter 7 relief could address.

## CONCLUSION

In sum, the Debtors have failed to rebut the showing by the U.S. Trustee that their conduct constitutes substantial abuse, and have also failed to show that their case was filed in good faith or that they are otherwise entitled to chapter 7 relief. The Court finds that the Debtors have not completed their scheduled with good faith and candor, that they are gainfully employed and appear to have a reliable source of ongoing future income, that their debts are primarily consumer debts, that they have an ability to pay a significant dividend to their creditors, and that there are no mitigating or extraordinary factors present that would justify allowing them to proceed in chapter 7. The Court finds this to be one of the rare cases where granting the debtors relief under chapter 7 would actually provide the debtors with a "head start" versus the "fresh start" the Bankruptcy Code envisions. Therefore, the Court grants the U.S. Trustee's motion to dismiss this case under 11 U.S.C. § 707(b).

This memorandum constitutes the Court's findings of fact and conclusions of law.

November 19, 2004  
Burlington, Vermont

Colleen A. Brown  
United States .Bankruptcy Judge